UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT SPEARMAN,

                                Plaintiff,

                  v.                                  1:05-CV-148
                                                        (FJS/RFT)

DUTCHESS COUNTY and
DAWN JOHNSON,

                                Defendants.
_____

**APPEARANCES**                                     **OF COUNSEL**

**DONOHUE, SABO, VARLEY &**             **DENNIS G. VARLEY, ESQ.**
**HUTTNER, L.L.P.**
24 Aviation Road
P.O. Box 15056
Albany, New York 12212-5056
Attorneys for Plaintiff

**KELLY & MEENAGH, ESQS.**             **THOMAS F. KELLY, ESQ.**
135 North Water Street
P.O. Box 1031
Poughkeepsie, New York 12602
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      In Plaintiff's February 3, 2005 complaint, he asserts four claims against Defendant Dawn

Johnson, a social welfare worker employed by the Dutchess County Department of Social

Services ("DSS"), in her individual capacity: (1) false arrest pursuant to 42 U.S.C. § 1983,

(2) malicious prosecution pursuant to 42 U.S.C. § 1983, (3) false arrest pursuant to New York

State law, and (4) malicious prosecution pursuant to New York State law.[1]  *See* Complaint at ¶¶ 29-48.  Against Defendant Dutchess County ("County"), Plaintiff asserts two claims under the doctrine of *respondeat superior*: (1) false arrest pursuant to New York State law, and (2) malicious prosecution pursuant to New York State law.  *See id.* at ¶¶ 49-53.

Defendants move for summary judgment with respect to all of Plaintiff's claims on the grounds that Defendant Johnson is entitled to qualified immunity; the Court should decline jurisdiction over Plaintiff's state-law claims once it dismisses Plaintiff's federal-law claims; and, even if the Court does not decline jurisdiction over the state-law claims, it should dismiss them as a matter of law.

## II. BACKGROUND

DSS filed a petition in the Dutchess County Family Court on or about October 4, 1993, seeking child support from Plaintiff on behalf of Alicia Baggett, who alleged that Plaintiff was the father of her son, L.B.  *See* Affidavit of Robert B. Allers ("Allers Aff."), sworn to February 16, 2006, at Exhibit "B."  After the family court dismissed that petition without prejudice because Ms. Baggett failed to appear at a hearing, DSS filed a second petition for support on or about March 18, 1994.  *See id.* at Exhibits "C" & "D."  At a hearing on September 7, 1994, the

---

[1] In his complaint, Plaintiff claims that Defendants violated his rights "under the First and Fourteenth Amendments to the Constitution of the United States."  *See* Complaint at ¶ 35.  Since Plaintiff's arguments only involve unlawful seizure pursuant to the Fourth Amendment, as incorporated through the Fourteenth Amendment, the Court construes his complaint to state Fourth Amendment claims and holds that Plaintiff has abandoned any First Amendment claims. *See Kozey v. Quarles*, No. 3:04 CV 1724 MRK, 2005 WL 2387708, *2 (D. Conn. Sept. 28, 2005) (holding that the plaintiff abandoned any First Amendment claims because his "brief d[id] not make any arguments founded upon the First Amendment").

hearing examiner ordered the parties to take a genetic marker test to determine paternity. *See id.* at Exhibit "E." The laboratory that conducted the tests[2] issued a report, concluding that, "[t]he alleged father, ROBERT SPEARMAN, lacks the following genetic marker(s) which are present in the child, LB, and absent in the mother: HLA A1. Therefore, the alleged father cannot be the biological father of the child. The alleged father is also excluded by the MNSs and Kidd systems." *See id.* at Exhibit "F."

The parties appeared before a hearing examiner on January 18, 1995, who then referred the case to a family-court judge for further proceedings on the issue of paternity. *See id.* at Exhibit "A." It is unclear exactly why the hearing examiner referred the case; however, Defendants submit DSS notes suggesting that the reason was that Ms. Baggett continued to assert that she had not had sexual relations with anyone but Plaintiff during the period in which the child was conceived. *See id.* Pursuant to DSS' motion, the family court ordered a second round of blood tests on March 13, 1995. *See id.* at Exhibit "G." The family court's order did not discuss or refer to the first round of blood tests.[3] *See id.*

Plaintiff failed to appear for at least four scheduled blood tests on March 13, 1995, March 27, 1995, April 24, 1995, and May 8, 1995. *See id.* at Exhibits "H," "I," "J"; Plaintiff's Statement of Material Facts at ¶ 6. On May 24, 1995, the family court entered an order of filiation by default, declaring Plaintiff to be L.B.'s father. *See* Allers Aff. at Exhibit "K." After Plaintiff failed to appear for a subsequent family-court proceeding on June 29, 1995, the hearing

---

[2] The New York State Commissioner of Health licensed this particular laboratory to conduct genetic marker tests. *See* Allers Aff. at Exhibit "F."

[3] In fact, it is not readily apparent from the face of the family court's order that the court was aware of the first round of blood tests that excluded Plaintiff as L.B.'s father.

examiner entered an order of support by default pursuant to which Plaintiff was ordered to pay $108.21 each week. *See id.* at Exhibit "L."

On or about September 19, 1997, DSS filed a petition in the family court, alleging that Plaintiff failed to pay support in violation of the court's order. *See id.* at Exhibit "M." Plaintiff did not appear at the subsequent hearing. The parties disagree about whether the hearing examiner issued a warrant for Plaintiff's arrest, *see* Plaintiff's Statement of Material Facts at ¶ 10; however, they agree that Plaintiff was later arrested on July 13, 1998, *see id.* at ¶ 11. Plaintiff claims he was detained for a period of thirty days.[4] *See id.*

The facts are unclear regarding what happened next. The parties agree that, on October 6, 1998, DSS withdrew its violation petition based on the first round of blood tests excluding Plaintiff as the father. *See id.* at ¶ 12. Defendants assert that DSS withdrew its petition with the understanding that Plaintiff's court-appointed counsel would move to vacate the order of filiation.[5] *See* Defendants' Statement of Material Facts at ¶ 12. On March 24, 2000, DSS re-filed its violation petition. *See* Allers Aff. at Exhibit "O." According to Defendants, DSS re-filed the petition because Plaintiff failed to move for vacatur.[6] *See* Defendants' Statement of Material Facts at ¶ 13. On September 21, 2000, a family-court hearing examiner conducted an inquest and found that Plaintiff violated the family court's support order and ordered him to pay $36,001.07, the amount of outstanding support payments that he owed. *See* Allers Aff. at Exhibit "P."

---

[4] Plaintiff does not seek recovery for his July 13, 1998 detention in this action.

[5] Plaintiff, however, asserts that no one told him that he had to move to vacate the order. *See* Plaintiff's Statement of Material Facts at ¶ 12 (citation omitted).

[6] Plaintiff denies that DSS renewed its petition for this reason. *See* Plaintiff's Statement of Material Facts at ¶ 13.

DSS filed at least two more violation petitions on February 9, 2001, and August 10, 2001, alleging that Plaintiff continued to default on his support payments. *See id.* at Exhibits "Q" & "R." The family-court hearing examiner conducted an inquest in connection with both petitions and found that Plaintiff again violated the family court's support order. *See id.* at Exhibits "Q" & "U." In addition, the hearing examiner recommended that Plaintiff be committed to the county jail for a period of three months. *See id.* at Exhibit "U." On August 2, 2002, the family-court judge confirmed the hearing examiner's recommendation for Plaintiff's commitment; however, the judge stayed Plaintiff's commitment as long as he paid the sum of $25 each month. *See id.* at Exhibit "V."

Defendant Johnson, who first became involved with Plaintiff's support action in August 2003, *see* Defendants' Statement of Material Facts at ¶ 24, filed a petition on behalf of DSS on or about September 22, 2003, requesting that the family court lift the stay on its order of commitment because Plaintiff had not made the required payments. *See* Allers Aff. at Exhibit "W." Consequently, on September 25, 2003, the family court ordered Plaintiff to be committed for a period of three months. *See id.* at Exhibit "X." Plaintiff was arrested on October 28, 2003, and confined until February 3, 2004. *See* Defendants' Statement of Material Facts at ¶ 30.

While in detention, Plaintiff filed a motion in the family court to vacate the order of filiation. *See* Affidavit of Kenneth G. Varley, sworn to April 25, 2006, at Exhibit "A" at 25-27. In connection with this motion, the family-court judge ordered Plaintiff to undergo another round of blood tests. *See id.* at Exhibit "A" at 28. Plaintiff submitted to these tests; and, after the laboratory reported that Plaintiff was excluded as L.B.'s father, *see* Allers Aff. at Exhibit "Z," the court vacated its prior orders of filiation and support on February 3, 2004. *See id.* at Exhibit

"AA."

### III. DISCUSSION

**A.     Plaintiff's false-arrest claims against Defendant Johnson**

When analyzing a claim for false arrest under the Fourth Amendment to the United States Constitution, the court looks to "the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) (citations omitted); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  To prevail on such a claim under New York law, a plaintiff must demonstrate that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement is not otherwise privileged."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

Although they often accompany one another, false arrest and malicious prosecution are distinct causes of action.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court stated that,

> unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but no more."

*Id.* at 484 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984)).

Thus, once legal process is initiated, any subsequent Fourth Amendment deprivation falls under the malicious prosecution cause of action.  *See id.*; *Singer v. Fulton County*

*Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (citations omitted); *Broughton v. New York*, 37 N.Y.2d 451, 457 (1975). In the criminal context, legal process is ordinarily initiated by an arrest warrant application, an arraignment, or an indictment. *See Singer*, 63 F.3d at 117 (citations omitted). However, where a plaintiff claims malicious prosecution in a civil proceeding, legal process is initiated when a party "sets the machinery of the law in motion . . . ." Restatement (Second) of Torts § 674 (1977).

DSS filed a child support petition against Plaintiff in the family court on October 4, 1993, and again on March 18, 1994. Defendant Johnson filed a petition to remove the stay on the family court's commitment order on or about September 22, 2003. Plaintiff claims that the illegal seizure occurred from October 28, 2003, to February 3, 2004, when he was arrested and committed by order of the family court. *See* Complaint at ¶¶ 30 & 40. Whether the relevant commencement of legal process in this action occurred on October 4, 1993, March 18, 1994, or September 22, 2003, the seizure occurred pursuant to legal process. Plaintiff may, therefore, state a claim for malicious prosecution, but he does not state a claim for false arrest. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's federal and state false-arrest claims against Defendant Johnson.

**B.     Plaintiff's malicious-prosecution claims against Defendant Johnson**

Plaintiff's malicious-prosecution claims against Defendant Johnson are based on the theory that she did not have probable cause to pursue a child-support action against Plaintiff because DSS and its employees had known since December 1994 that a blood test excluded him as L.B.'s father. Defendant Johnson, however, contends that she is entitled to qualified

immunity because she did not violate Plaintiff's right to be free from malicious prosecution.[7] Specifically, she argues that she had probable cause to petition the family court to lift its stay on the commitment order because she learned that Plaintiff failed to make the required support payments and she knew that the family court had issued an order of filiation by default.

In a § 1983 malicious-prosecution claim, as in a false-arrest claim, the court applies the substantive law of the state in which the prosecution occurred.  *See Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 39 (2d Cir. 1985).  Under New York law, to prove a malicious civil prosecution claim, a plaintiff must establish "(1) the commencement and prosecution of a judicial proceeding against the plaintiff; (2) by or at the insistence of the defendant, (3) without probable cause, (4) with malice, (5) which has terminated in favor of the plaintiff in the malicious prosecution action, (6) to her injury, and (7) that the plaintiff suffered interference with her person or property." *Sundbye v. Ogunleye*, 3 F. Supp. 2d 254, 260 n.11 (E.D.N.Y. 1998) (citing *Realty By Frank Kay, Inc.* [*v. Majestic Farms Supply, Ltd.*], 553 N.Y.S.2d [858,] 859 [(2d Dep't 1990)]).

Plaintiff attempts to recover for malicious prosecution, not in connection with a criminal proceeding, but in connection with a civil family-court proceeding.  *See Cashman v. Rosenberger*, No. 105 CV 0640, 2005 WL 1331127, *1 (N.D.N.Y. June 1, 2005) (stating that a proceeding for child support in New York State family court is a civil proceeding); *cf.*

---

[7] Although Defendants claim that Defendant Johnson is entitled to qualified immunity, they could have simply moved to dismiss Plaintiff's malicious-prosecution action for failure to state a claim.  Indeed, as stated *infra*, the Court need not reach the qualified-immunity issue in this case.

*People v. Smith*, 62 N.Y.2d 306, 309 (1984) ("A child abuse or neglect proceeding under Article 10 of the Family Court Act is a civil proceeding."). However, as stated, the plaintiff in a civil malicious-prosecution suit must still demonstrate the absence of probable cause. Plaintiff has not done so in this case. The party initiating a civil action has probable cause if she "reasonably believes in the existence of the facts upon which the claim is based, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law . . . ." Restatement (Second) of Torts § 675 (1977); *see also Pangburn v. Bull*, 1 Wend. 345 (N.Y. Sup. Ct. 1828) (holding that, unless the facts are "absolutely conclusive, so as to preclude [any further inquiry] . . . ," a party has probable cause to initiate a civil action to develop her case before the trier of fact).

Plaintiff does not contest that Defendant Johnson had probable cause to believe that he willfully disobeyed the family court's order of support.[8] This is all that Defendant Johnson needed in order to petition the family court to remove the stay on its commitment order. Defendant Johnson's petition initiated a legal proceeding wholly independent of the underlying support proceeding. *See Smith v. Mathis-Smith*, 17 A.D.3d 1157, 1158 (4th Dep't 2005) (holding that, under Article 4 of the Family Court Act, the filing of a petition initiates a new legal proceeding); *see generally* N.Y. Fam. Ct. Act §§ 423 & 453.

---

[8] Defendants also submitted DSS records revealing that Plaintiff did not make a single support payment during the relevant periods. *See* Allers Aff. at Exhibit "W."

Plaintiff's paternity was not at issue in the contempt proceeding.[9] At issue was whether Plaintiff willfully failed to obey a lawful order[10] of support. *See* N.Y. Fam. Ct. Act § 454. Since Defendant Johnson — who only became involved in Plaintiff's case in August 2003, more than eight years after the family court issued its order of support — had probable cause to believe that Plaintiff violated that order, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's federal and state malicious-prosecution claims against Defendant Johnson

**C.     Plaintiff's *respondeat superior* claims against Defendant County**

The Court retains jurisdiction over Plaintiff's state-law claims against Defendant County in the interests of judicial economy and fairness to the parties. *See Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (quotation omitted).

Although *respondeat superior* liability does not exist under § 1983, it does exist under New York State tort law. *See Raysor*, 768 F.2d at 38; *Davis v. City of N.Y.*, 373 F. Supp. 2d 322, 339 (S.D.N.Y. 2005) (quotation and other citations omitted). Pursuant to the

---

[9] The Court refers to this proceeding as one for "contempt" because it most resembles a contempt proceeding. However, New York Family Court Act § 454 provides its own mechanism for enforcing the violation of a support order, which overrides the Family Court Act's general contempt provision contained in § 156.

[10] An order is unlawful only if it is non-existent or facially invalid. *See, e.g., Mesick v. Mesick*, 71 A.D.2d 737, 738 (3d Dep't 1979) (holding that the family court could not commit a party for violating an order that it never actually issued); *Garris v. Garris*, 51 A.D.2d 627, 628 (3d Dep't 1976) (holding that the family court's order committing a party for failure to pay support was unlawful because it did not contain a directive to pay support); *Breland v. Breland*, 82 Misc. 2d 277, 282 (N.Y. Fam. Ct. 1975) (holding that a party could not have willfully violated an order that the court did not sign or date until a month after it issued the order). Mere legal error does not make an order unlawful.

doctrine of *respondeat superior*, a municipal employer is liable for the torts committed by its employees if the "'plaintiff can show that the officer was acting in furtherance of the duties he owes to his employer and that the employer is, or could be, exercising some control, directly or indirectly, over the employees' activities.'" *Davis*, 373 F. Supp. 2d at 339 (quotation omitted). Thus, an employer's liability is dependent on the nature and extent of its employee's actions.

As stated, Defendant Johnson did not commit common-law false arrest or malicious prosecution. Therefore, Plaintiff cannot hold Defendant County liable for her actions. Moreover, since Plaintiff's contempt was the sole proximate cause of his commitment, the unnamed DSS employees who initiated and continued the underlying child-support proceeding did not commit false arrest or malicious prosecution.[11] Accordingly, Plaintiff

---

[11] To hold a defendant liable for the deprivation of a plaintiff's constitutional right, a court must determine that the deprivation was a "legally cognizable result" of his misconduct. *Zahrey v. Coffey*, 221 F.3d 342, 351 (2d Cir. 2000). Therefore, "a person whose initial act is the 'but for' cause of some ultimate harm (i.e., the harm would not have happened but for the initial act) is not legally liable for the harm if an intervening act is a 'superseding cause' that breaks the legal chain of proximate cause." *Id*. at 351 n.7 (citing Restatement (Second) of Torts § 440 (1965)). A superseding cause is one that is independent of or far removed from the defendant's alleged misconduct. *See Becker v. Poling Transp. Corp.*, 356 F.3d 381, 392 (2d Cir. 2004) (quoting *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666, 670 (1980)).

A plaintiff's exercise of free will, which directly precipitates his own injury, may be a superseding act that breaks a chain of causation. *See, e.g., Reinard v. Harsco Corp.*, No. 05-CV-738S, 2006 WL 2795639, *5-*6 (W.D.N.Y. Sept. 26, 2006) (holding that the decedent's own exercise of free will caused his suicide, not his employer's alleged discriminatory discharge); *Estate of Sowards v. City of Trenton*, 125 Fed. App'x 31, 41-42 (6th Cir 2005) (holding that plaintiff's own conduct, threatening officers with a firearm, was the proximate cause of his injury, not the officers' illegal entry into his home); *Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995) (holding that illegal entry and unlawful force claims must be determined separately because a suspect's resistance may be a superseding cause limiting the officers' liability for

(continued...)

cannot hold Defendant County liable for their actions.[12]  The Court, therefore, grants Defendants' motion for summary judgment with respect to Plaintiff's *respondeat superior* claims against Defendant County.

---

[11](...continued)
illegal entry).  In *Shallow v. Rogers*, No. 05-6227, 2006 WL 924990 (E.D. Pa. Apr. 6, 2006), the plaintiff was detained for refusing to submit to a court-ordered psychological evaluation in a custody proceeding.  *See id.* at *4.  Although the plaintiff argued that the attorney for his ex-wife proximately caused his detention, the court held that the plaintiff's own failure to follow the court's order was the sole proximate cause, not the underlying events and proceedings.  *See id.*

       Similarly, Plaintiff's failure to follow the family court's support order was the sole proximate cause of his detention.  Although there would not have been a support order for Plaintiff to violate but for DSS' underlying support petition, Plaintiff's willful violation of the support order was the superseding cause of his constitutional injury.  By his actions, Plaintiff severed any causal link that may have existed between his detention and the underlying paternity determination.

       [12] Since the Court holds that Plaintiff's contempt constituted the sole proximate cause of his detention, it need not decide whether the unnamed DSS employees had probable cause to maintain a support action against Plaintiff after they learned that the first round of blood tests excluded him as the father.  However, based on the record before the Court, they did not.  Absent evidence of tampering or error, a genetic marker test excluding an individual as the parent of a child is virtually conclusive.  *See In re Bonanno*, 192 Misc. 2d 86, 88 (N.Y. Sur. Ct. 2002) (holding that, where a genetic marker test, the results of which the parties did not dispute, excluded decedent as the petitioner's father, there was no further issue of fact for a paternity hearing); *Moore v. Astor*, 102 Misc. 2d 472, 475 (N.Y. Fam. Ct. 1980) ("A blood grouping test is a substantial right since a blood grouping test exclusion conclusively demonstrates nonpaternity." (citations omitted)).  The protestations of the mother that Plaintiff was her only sexual partner during the period of conception is not enough, in light of apparently accurate genetic test results, to establish probable cause.  *See Korthas v. City of Auburn*, No. 5:04-CV-537, 2006 WL 1650709, *5 (N.D.N.Y. June 9, 2006) (stating that an individual "'may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause'" (quotation omitted)).

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: July 25, 2008
       Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge